UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA – WESTERN DIVISION

**USAA Casualty Insurance Company**
as subrogee of Henry and Jennifer Walburn

  *Plaintiff*

v.

**TFP Construction, Inc.**

  *Defendant*

C.A. _____

Jury Demanded

## Complaint

Plaintiff USAA Casualty Insurance Company, as subrogee of Henry and Jennifer Walburn, brings this lawsuit timely against Defendant TFP Construction, Inc., and alleges the following:

### Parties

1. Plaintiff USAA Casualty Insurance Company ("USAA") is a Texas corporation with its principal place of business in San Antonio, Texas. USAA's insureds Henry and Jennifer Walburn are Alabama citizens.

2. Defendant TFP Construction, Inc. ("TFP") is an Alabama corporation with its principal place of business in Northport, Alabama. This defendant may be served through its registered agent, Johnny Ferrell Jones, Jr., at 13969 Prince William Way in Northport, Alabama.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this claim because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

4. This Court may exercise personal jurisdiction over the defendant because it resides, transacts business, and/or committed one or more of the acts that give rise to this lawsuit, in Tennessee.

5. Venue is proper in this district because this a substantial part of the events or omissions giving rise to the claim occurred and because a substantial part of property that is the subject of the action is situated in Greene County, Alabama. *See* 28 U.S.C. § 1391(b)(2).

**Factual Allegations**

6. Either or both of the Walburns contracted with TFP for the construction of a new residence at or about 20485 US Highway 11 in Eutaw, Greene County, Alabama.

7. Just a few months after the completion of the home, on or about November 10, 2017, a fire occurred and damaged the home and other property ("the Fire"). This is a true and correct photograph of the home taken after the Fire:



8. The Fire originated with the chase for the fireplace. The night of the Fire, the fireplace was being used for only the second time ever.

9. The flue did not comply with its maker's instructions and was otherwise deficient—and it was those deficiencies that caused the Fire.

   a. More specifically, the chimney allowed "one offset (two elbows total) of up to 30° from vertical." TFP (or those for whom TFP is legally responsible) installed the two offsets (four elbows) of more than 30° total.

   b. The flue also required four screws at each joint connection: "The joint assembly is a male to female slip fit and held together with four (4) sheet metal

screws provided." TFP installed only a handful of screws throughout the flue—and never the required four.

10. These deficieincies led to a chimney that was unstable, unsafe, and a fire hazard. Indeed, the flue installation instructions caution that "These instructions must be followed in all details and failure to do so may result in a hazardous installation."

11. This is a diagram of TFP flue construction alongside charts of the screws found within each connection and the weight of each section.



| Screw Inventory | |
|---|---|
| Joint | # of screws |
| 1 | 0 |
| 2 | 0 |
| 3 | 0 |
| 4 | 0 |
| 5 | 0 |
| 6 | 0 |
| 7 | 2 |
| 8 | 2 |
| 9 | 1 |
| Section Weights (lbs) | |
| A | 14.0 |
| B | 18.5 |
| C | 14.0 |

12. This photograph shows one of the flue connections without the requisite screws:



13. The flue construction deficiencies led to a breach, allowing superheated air from the fire to escape and ignite combustibles within the chimney.

14. This is the fire in its initial stages. The location of the emerging flames is consistent with an ignition within the chimney:



15. The flue breach occurred because TFP had improperly made/constructed it, or because TFP had chosen materials ill-suited for the flue, or both. The flue breach did not occur because of unforeseeable event, an act by the Walburns, or any other intervening cause.

16. At the time of the Fire, the Walburns had a valid and enforceable property insurance policy with USAA.

17. As required by that policy, USAA paid the following sums for damages proximately caused by the Fire:

    | | |
    |---|---|
    | Loss of Use/Additional Living Expense | $5,000.00 |
    | Dwelling-Structure Repairs | $210,957.88 |
    | Personal Property-All Other Personal Property | $48,750.57 |
    | Trees, Shrubs and Other Plants | $7,064.00[1] |

18. To the extent of its payments to the Walburns for the Fire damages, USAA is legally and equitably subrogated to Walburns' rights and claims.

19. Having fairly resolved the Walburns' underlying property insurance claims, USAA now brings the following claims, pleaded alternatively and cumulatively:

**Count 1 – Negligence**

20. In undertaking the construction of the home, TFP undertook to discharge that duty with reasonable care, so as not to damage the property of others, and in a manner commensurate with its standing as a professional homebuilder.[2]

---

[1] "In light of the adversarial relationship that generally exists between an insurer and a claimant-insured, an inference may properly be drawn that the amount of damage to which the insurer concedes is, at the very least, the lower boundary of the damage actually suffered." *Lakewood Engineering and Manufacturing Co. v. Quinn*, 604 A.2d 535, 539-40 (Md. App. 1992).

[2] "The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence." *Benson v. Tenn. Valley Elec. Coop.,* 868 S.W.2d 630, 638 (Tenn. Ct. App. 1993).

21. "The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence. It is immaterial whether the person acts in his own behalf or under a contract with another."[3]

22. TFP owed that duty to those foreseeably harmed by the failure to meet it, including the Walburns.

23. TFP breached this duty by failing to: construct the Walburn home without defects in materials and workmanship; ensure that employees and subcontractors worked peroperly; and perhaps otherwise exercise reasonable care in ways that discovery may disclose.

24. As a proximate result of one or more of these breaches, the Fire and resulting damages to the Walburns occurred.

25. Therefore, TFP is liable to the Walburns—and by extension, to USAA—for damages proximately caused by the Fire.

**Count 2 – Breach of Contract**

26. Before the Fire, one or both of the Walburns contracted with TFP to construct the home through an enforceable contract.

---

[3] *QORE, Inc. v. Bradford Bldg. Co., Inc.*, 25 So.3d 1116, 1124–1125 (Ala. 2009) ("where one party to a contract assumes a duty to another party to that contract, and it is foreseeable that injury to a third party—not a party to the contract—may occur upon a breach of that duty, the promissor owes that duty to all those within the foreseeable area of risk."); *Council v. Dickerson's, Inc.*, 64 S.E.2d 551, 553 (N.C. 1951). *See also Oates v. Jag, Inc.*, 333 S.E.2d 222, 225 (N.C. 1985) ("The duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another; however, the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise. The duty exists independent of the contract.");

27. As with all service contracts, the Contract carried with it a non-delegable, "implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner."[4]

28. That contract also required TFP to carry out the contract in accordance with the law applicable to that work.[5]

29. TFP breached its contractual obligations to the Walburn(s) by failing to: construct the Walburn home without defects in materials and workmanship; ensure that employees and subcontractors worked peroperly; and perhaps otherwise exercise reasonable care in ways that discovery may disclose.

30. As a proximate result of one or more of these breaches, the Fire and resulting damages to the Walburns occurred.

31. Wherefore, TFP is contractually liable to the Walburn(s)—and by extension, USAA— for the sums USAA spent repairing the Walburn home.

**Conditions Precedent**

32. All conditions precedent to bringing this lawsuit have occurred, been performed, or been waived.

**Relief Requested**

33. Wherefore, USAA respectfully requests that it recover the $271,771.57 in damages caused by the defendant's actionable conduct, as well as pre- and post-judgment interest, court costs, and any additional sums or relief this Court deems appropriate.

---

[4] *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011); *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I. 1990) ("[T]here is implied in every contract for work or services a duty to perform it skillfully, carefully, and diligently and in a workman-like manner[.]").

[5] *See Kee v. Shelter Ins. Co.*, 852 S.W.2d 226, 228 (Tenn. 1993) ("Those laws which in any manner affect the contract, whether its construction, the mode of discharging it, or which control the obligation which the contract imposes, are essentially incorporated with the contract itself …") (citation omitted).

**Plaintiff Demands a Trial by Jury**

| | |
|---|---|
| Wednesday, November 07, 2018 | Respectfully submitted, |
| Tuscaloosa, Alabama | ZEANAH, HUST, SUMMERFORD, WILLIAMSON & COX LLC |
| | /s/ *Joseph T. Cox* |
| | Joseph T. Cox, III (ASB-8479-E45C) |
| | 2330 University Blvd., 8th Floor |
| | Tuscaloosa, AL 35401 |
| | Office: (205) 349-1383 |
| | E-Mail: jcox@zeanahhust.com |

Of counsel

QUIST, FITZPATRICK & JARRARD PLLC

By: /s/ *Michael A. Durr*

Michael A. Durr (TBA 26746)
800 South Gay Street, Suite 2121
Knoxville, Tennessee 37929
Direct: (865) 312-0440
E-Mail: mdurr@qcflaw.com
*Attorney for Plaintiff*